**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JEFFREY C. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. _____ |
| TOWN OF DEWEY BEACH, DELAWARE | ) | |
| | ) | |
| MAYOR T.J. REDEFER, individually and in his official capacity as Mayor of Dewey Beach, Delaware | ) | Non-Arbitration |
| | ) | |
| SGT. CLIFFORD DEMPSEY, individually | ) | |
| | ) | Demand for Jury Trial |
| LARRY SILVER, individually | ) | |
| | ) | |
| Defendants. | | |

**COMPLAINT**

COMES NOW, Jeffrey C. Smith, by and through his attorney, Stephen P. Norman, Esquire, who brings this Complaint against the Town of Dewey Beach, Delaware, Mayor T.J. Redefer, SGT. Clifford Dempsey, and Larry Silver.

**FACTS**

**Parties**

1. Plaintiff, Jeffrey C. Smith ("Plaintiff"), is a Delaware resident who may be contacted for the purposes of this litigation through his counsel, Stephen P. Norman of The Norman Law Firm, 30838 Vines Creek Road, Unit 3, Dagsboro, DE 19939.

2. Defendant, Town of Dewey Beach, Delaware (the "Town"), is a municipal corporation duly organized, existing and operating under and pursuant to the applicable laws of the State of Delaware.

1

3. Defendant, Mayor T.J. Redefer ("Mayor" or "Redefer"), acted under color of law as an agent or employee of the Town of Dewey Beach Police Department ("DBPD") and as the Final Policymaker for the Town, at all relevant times hereto.

4. Defendant, Larry Silver ("Silver"), acted under color of law as an agent or employee of the Town as the Chairman of the Dewey Beach Audit Committee at all relevant times hereto.

5. Defendant, SGT. Clifford Dempsey ("Dempsey"), acted under color of law as an agent or employee of the DBPD located at 105 Rodney Avenue, Dewey Beach, Delaware, at all relevant times hereto.

## Jurisdiction and Venue

6. This is a civil action for damages arising under the First and Fourth Amendments to the United States Constitution, The Civil Rights Act of 1964 – 42 U.S.C. § 1983 and § 1988.

7. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1331, 1343(a)(3) and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

8. Personal jurisdiction is proper since all parties either reside in the District, conduct business in the District, or the unlawful actions giving rise to the claim took place within this District.

9. Venue is properly in this Court pursuant 28 U.S.C. §1391(b) because the events giving rise to the suit occurred in this judicial District.

## Common Allegations of Fact

10. Plaintiff is a member and director of the citizens watchdog group Dewey Citizens for Accountability ("DCA")

11. One of DCA's primary goals is to hold Dewey Beach and its police department accountable regarding the police department's participation in the LESO program.

12. The LESO program is a program where the federal government provides local police

departments surplus military equipment for little to no cost.

13. In pursuing its goal of holding the Town accountable, DCA publishes a newsletter, reports on town meetings, and marches through Dewey Beach demanding accountability by the Dewey Police Department ("DBPD").

14. On August 3, 2018, Plaintiff attended an Audit Committee meeting.

15. At the meeting, two of the five Audit Committee members resigned citing intimidation to vote a certain way.

16. Following the meeting Plaintiff was handed a copy of a draft audit report discussed at the meeting by Roy Geiser ("Geiser") of TGM Group.

17. TGM Group is the firm hired by the Audit Committee to audit the Town's finances regarding the LESO program.

18. At least two journalists were also provided a copy of the draft report at the meeting.

19. The report says "DRAFT" and does not say "CONFIDENTIAL" anywhere on the report.

20. Plaintiff left with the draft report which was discussed at length during the Audit Committee meeting.

21. After Plaintiff left the meeting he was confronted by the Town's Audit Committee chairman Larry Silver ("Silver") demanding he return the draft audit report he was given by Gieser.

22. Plaintiff refused to give back the public document.

23. Silver then tried to rip the report out of Plaintiff's hands.

24. After the unsuccessful attempt to pull the report from Plaintiff's hands, Silver then tried to pull the license plate off Plaintiff's vehicle.

25. In the process of attempting to remove the license plate Silver bent Plaintiff's license plate.

26. Silver tried to remove the license plate so that he would have proof of who took the public

document.

27. Removing someone's license plate is a theft under Delaware's criminal code.

28. Silver was not charged with any crime.

29. A reporter for the Cape Gazette received a copy of the draft report at the meeting.

30. On August 4, 2018, an Initial Crime Report signed by Sgt. Dempsey ("Dempsey") and approved by Clifford Dempsey ("C. Dempsey") charged Plaintiff with removing Town property from a governmental building and acting disorderly when confronted.

31. Upon information and belief Dempsey, the drafter, and C. Dempsey the approving supervisor are the same person.

32. The Town of Dewey Beach and "Society" were both listed as the victim on the police report.

33. The report charged Plaintiff with the crimes of theft under $1500 for taking the "Dewey Beach Financial Report and Audit Draft Dewey Beach Agreed Upon Procedures (AUP)".

34. Plaintiff was also charged with disorderly conduct by fighting or violent tumultuous or threatening behavior.

35. The incident report recites facts supporting a charge against Silver for attempting to rip the draft report from Plaintiff's hands and for attempting to rip Plaintiff's license plate from his car.

36. The incident report fails to provide probable cause to arrest Plaintiff for the crimes he was charged with.

37. Dempsey spoke to the former Town mayor, Diane Hanson, prior to charging Plaintiff with any crimes.

38. Upon information and belief, Hanson told Dempsey that she witnessed part of the incident between Silver and Plaintiff and did not see how a theft charge could be substantiated for

taking a public document handed out a public meeting.

39. Dempsey failed to list Hanson as a witness in the incident report he compiled.

40. Ellen Driscoll ("Driscoll"), a reporter for the Cape Gazette newspaper, also spoke to Lieutenant Hocker of the DBPD, on or about August 6, 2018.

41. Driscoll provided Hocker with firsthand information regarding what was said at the meeting related to the Draft Audit Report.

42. Despite Driscoll's statement to Hocker, Dempsey never listed Driscoll as a witness to the incident.

43. However, the current mayor, T.J. Redefer (the "Mayor"), was listed as Witness number 5 in the incident report.

44. The Mayor provided at least four materially false statements to Dempsey in his witness statement.

45. One, false statement made by the Mayor is that attendees at the public meeting were told that the draft audit documents handed out were not public documents and must be returned.

46. The Mayor also falsely stated that an individual requested a reporter hand back a copy of the draft report after the audit meeting because it was not yet a public document.

47. Another false statement made by the Mayor is that Plaintiff was "angry and out of control".

48. Yet another false statement provided by the Mayor is that Plaintiff assaulted Silver.

49. The Mayor could not have witnessed Plaintiff's demeanor or interaction with the reporter or Silver since the Mayor left the meeting at least ten minutes before Plaintiff arrived.

50. Silver himself did not allege that Plaintiff assaulted him.

51. Upon information and belief, these false statements alleging that Plaintiff committed a crime were made to intimidate Plaintiff who was a vocal critic of the Mayor's failure to be

accountable on the military surplus program called LESO.

52. While investigating the incident, Dempsey was notified by the Dewey Beach Town Manager and other witnesses that a reporter from the Cape Gazette and a reporter from the Dover Post were in possession of the draft report.

53. Both reporters informed Dempsey that they were not aware that the document was to be left in the building after the meeting was adjourned.

54. Dempsey did not charge either reporter with any crime.

55. Despite overwhelming evidence that no crime had been committed, on August 4, 2018, Dempsey swore out a warrant for Plaintiff's arrest which was sent to Justice of the Peace Court 2.

56. The warrant contained the sworn statement of Dempsey who omitted to list Hanson, or Driscoll, as witnesses.

57. The warrant omitted the fact that several reporters also left the meeting with copies of the draft audit report.

58. Dempsey provided a false statement that multiple witnesses provided numerous statements confirming Plaintiff's "violent tumultuous behavior."

59. The warrant omitted that Dempsey had spoken to the former mayor Hanson who disputed the statement that the public was told at the audit meeting that the draft report was not a public document.

60. The warrant also failed to disclose that Plaintiff was handed a copy of the draft audit report by the auditor himself.

61. Plaintiff was released from custody and with an order to have no contact with the Town.

62. The no contact order was later changed from no contact with the Town, to no contact with

Town commissioners or audit committee members.

63. On August 6, 2018, Silver and town officials Dempsey and Redefer requested that the reporters return the draft audit report.

64. The Cape Gazette returned the draft report as a courtesy after retaining a copy of the document.

65. On August 8, 2018, Plaintiff returned a copy of the draft document by courier.

66. On August 10, 2018, Plaintiff turned himself in and was arrested by the DBP.

67. The Audit Committee secretary, Diane Hanson ("Hanson") drafted minutes of the August 3, 2018, Audit meeting which did not reflect that Silver had asked for the distributed draft audit report to be returned.

68. On August 17, 2018, the minutes Hanson drafted were unanimously approved by the Audit Committee.

69. On November 6, 2018, Silver held a Committee meeting to introduce new meeting Minutes from the August 3, 2018 and August 17, 2018, meetings.

70. The new minutes Silver proposed significantly changed the minutes that Hanson drafted for both these minutes.

71. Despite Hanson's objection, Silver added to the minutes of the August 3, 2018 meeting that he asked for the draft documents to be returned to auditors.

72. Upon information and belief, Silver made the changes to the minutes to cover the false statements made in the incident reports by the Mayor, Silver, and others.

73. The revised minutes passed by a 2-1 vote since two of the Audit Committee members had resigned at the August 3, 2018 meeting.

74. The revision passed with Silver and Steve Huse ("Huse") voting to approve the falsified

minutes.

75. The falsified minutes were published on the Town's website shortly after they were approved at the November 6, 2018 meeting.

76. Hanson and at least two other attendees at the audit committee meeting of August 3, 2018, Commissioner Dale Cooke ("Cooke"), and Commissioner Gary Persinger ("Persinger") dispute Silver's claim that he made such an announcement at the meeting.

77. Both (former Mayor and Commissioner) Hanson and Current Town Commissioners Cooke and Persinger did not hear Silver ask for the draft audit report to be returned.

78. Silver claimed for the first time on November 6, 2018, that he asked for the documents to be returned after the August 3, 2018 meeting was adjourned.

79. Silver had claimed at all times prior, that he made the announcement at the beginning of the August 3 meeting, a claim which was rejected in the August 3, 2018 original meeting minutes that were adopted.

80. Hanson did not approve Silver's unauthorized edited Minutes of the August 3, 2018 meeting.

81. Hanson stands by the unanimous approval of the August 3, 2018 minutes, at the August 17, 2018, committee meeting.

82. The revised Minutes are currently published on the Town's website.

83. The original approved Minutes for the August 3 meeting are not published on the website or elsewhere by the Town.

84. The charges filed against Plaintiff were brought by the law enforcement agency that Plaintiff's citizens group was challenging about their accounting procedures related to the LESO program.

85. On October 4, 2018, 2018, the case was dismissed by Nolle Prosequi without any concession

by Plaintiff.

86. Plaintiff still suffers from injuries, including but not limited to physical, emotional, and psychological injuries.

## COUNT I:  VIOLATION OF 42 U.S.C. §1983 FIRST AMENDMENT RETALIATION- SILVER, THE MAYOR, AND DEMPSEY

87. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

88. Plaintiff was engaged in protected activity as a well-known member and director of a citizen group with a mission to hold Dewey Beach and its police department accountable regarding the police department's participation in the LESO program.

89. While engaging in protected activity Plaintiff has been an outspoken critic of the Town's LESO program including criticizing the town verbally and in writing, and attending public demonstrations in town against the town's practices.

90. Plaintiff attended a meeting of the Town's audit committee where a draft audit report of the police department's participation in the LESO program was handed out to the public.

91. Plaintiff, as a member of the public, lawfully obtained a copy of the audit report and left the building after the meeting adjourned.

92. Plaintiff was confronted by Silver while walking to his vehicle who demanded that he immediately return the public draft audit report.

93. When Plaintiff refused to return the public draft report he was accosted by Silver who went so far as to attempt to remove the license plate from Plaintiff's car while Plaintiff and his wife were in the vehicle.

94. Silver then filed a false police report in retaliation against Plaintiff for taking home the public document.

9

95. The Mayor provided material false information regarding what he witnessed in support of the incident report allegations that Silver provided.

96. Dempsey, acting as the report drafter and report supervising officer, sought and arrested Plaintiff even though the incident report was not supported by actionable facts.

97. Silver attempted to cover up his actions by using his role as Audit Committee Chairman to materially alter the Committee's approved public Minutes to cover up his wrongdoing.

98. The adverse actions of Silver, the Mayor, and Dempsey caused Plaintiff to suffer an injury that would likely chill a person of ordinary firmness of resolution from continuing to engage in that activity.

99. The adverse action or actions of Silver, the Mayor, and Dempsey were motivated at least in part as a response to the exercise of plaintiff's constitutional rights.

100. As a result of Silver, the Mayor, and Dempsey's actions Plaintiff suffered serious physical, psychological, and other injuries.

### COUNT II: VIOLATION OF 42 U.S.C. §1983 4TH AMENDMENT UNLAWFUL DETENTION AS TO SILVER, THE MAYOR, AND DEMPSEY

101. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in the complaint, above and below, as though fully set forth herein.

102. The Mayor and Silver provided false material statements to Dempsey in his investigation which was used by Dempsey to establish probable cause to swear out a warrant and arrest Plaintiff.

103. Dempsey himself omitted important material information in the warrant he swore out.

104. Additionally, Dempsey provided materially misleading information of unnamed witnesses that Plaintiff committed a crime.

105. As a result of the false material statements and omissions made by the Mayor, Silver, and Dempsey, Plaintiff was seized when he was arrested.

106. Without the false statements and omissions of Dempsey, Silver, and the Mayor there would not have been probable cause to arrest Plaintiff.

107. The intrusion of Plaintiff's Fourth Amendment rights was not justified at its inception since it solely relied upon material false facts and omissions to establish probable cause.

108. The scope of the intrusion was not reasonably related to the circumstances that gave rise to is, but rather was wholly created by the false statements and omissions of Dempsey, Silver, and the Mayor.

109. As a result of Silver, the Mayor, and Dempsey's actions Plaintiff suffered serious psychological, reputational, and other injuries.

### COUNT III:  VIOLATION OF 42 U.S.C. §1983 USE OF EXCESSIVE FORCE AS TO SILVER

110. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

111. Silver used excessive force when he attempted to rip the draft audit report out of Plaintiff's hands.

112. Silver continued to use excessive force when he forcefully grabbed the license plate on Plaintiff's car and attempted to rip it off of the car while Plaintiff and his wife were in the vehicle.

113. Any and all force was excessive as there was no probable cause to seize Plaintiff.

114. Plaintiff was not committing a crime, was not disorderly, did not pose a threat of danger to anyone, and did not resist arrest or struggle.

115. The use of force was not justified.

116. As a result of Silver's excessive force, Plaintiff suffered psychological, and other injuries.

### COUNT IV:  STATE MALICIOUS PROSECUTION-SILVER, THE MAYOR, DEMPSEY

117. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

118. Dempsey initiated criminal proceedings against Plaintiff when he charged Plaintiff with theft under $1500 and disorderly supported by false material facts and omissions concerning Plaintiff being in possession of a public document he was provided at a public meeting.

119. Dempsey instituted or continued the criminal proceedings against Plaintiff by omitting material facts showing no crime occurred and by providing false material facts that Plaintiff committed a crime.

120. Upon information and belief, these criminal proceedings were instituted or furthered by both the Mayor and Silver by providing Dempsey with false material statements that Plaintiff stole the public document and was disorderly.

121. The charges were dismissed against Plaintiff without any concession of wrongdoing by Plaintiff.

122. Dempsey, the Mayor, and Silver maliciously and improperly initiated these criminal proceedings against Plaintiff because they both knew or should have known the charges lacked merit because there was an absence of probable cause to institute the criminal proceedings.

123. As a result, Plaintiff suffered serious reputational, psychological, and other injuries.

### COUNT V:  BATTERY-SILVER

124. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this

complaint, above and below, as though fully set forth herein.

125. Silver committed intentional and unpermitted contact up Plaintiff when he grabbed the public document Plaintiff was holding and attempted to rip it out of his hands.

126. Silver committed more intentional and unpermitted contact when he attempted to rip the license plate from the vehicle that Plaintiff was sitting in.

127. The contact was harmful and/or offensive to Plaintiff.

128. Plaintiff did not consent to the contact.

129. As a result, Plaintiff suffered severe emotional distress, humiliation, embarrassment, psychological injuries, and related physical symptoms.

### COUNT VI:  VIOLATION OF 42 U.S.C. §1983 MONELL CLAIM-FINAL POLICYMAKER

130. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

131. Redefer, as the town Mayor, was a final policymaker for the Town.

132. The Mayor was well aware that Plaintiff was the member of a citizens group critical of the Town's LESO program.

133. The Mayor conspired with Silver to provide false information to Dempsey to have Plaintiff arrested.

134. The Mayor's objective as final policymaker for the Town was to silence critics of the LESO program.

135. In fulfillment of this goal the mayor provided a false witness statement to Dempsey with added credibility due to his status as mayor.

136. In fulfillment of this goal the mayor conspired with Silver to replace the actual approved

Minutes of the Audit Committee with altered Minutes that set forth a false narrative that supported Silver and the Mayor's statements in the incident report.

137. The Mayor's actions as final policymaker caused the deprivation of Plaintiff's First and Fourth Amendment rights.

138. The actions of the Mayor as final policymaker for the Town of Dewey was the moving force behind the deprivation of Plaintiff's rights.

139. Plaintiff suffered loss of liberty, injury to reputation, and other damages as a result of the actions of the Mayor as final policymaker for the Town.

## **PRAYER FOR RELIEF**

WHEEFORE, Plaintiff prays for judgment against Defendants as follows:

A. All lawful damages, including compensatory damages in an amount to be determined, against all Defendants.

B. Nominal damages.

C. Punitive damages in an amount sufficient to punish Defendants and discourage them and others from engaging in similar conduct in the future.

D. Plaintiffs' cost in this action, including reasonable attorney fees pursuant to 42 U.S.C. §1983 and pre and post-judgment interest.

E. Lost past and future wages, back-pay, and front-pay.

F. Such other relief as this Court deems just and equitable.

G. Trial by Jury.

Respectfully Submitted,

|  |  |
|---|---|
|  | **THE NORMAN LAW FIRM** |
| **Dated:  February 21, 2019** | /s/Stephen P. Norman |
|  | Stephen P. Norman, Esquire, Bar I.D. 4620 |
|  | 30838 Vines Creek Rd., Unit 3 |
|  | Dagsboro, Delaware  19939 |
|  | 302-537-3788 |
|  | SNorman@TheNormanLawFirm.com |
|  | *Attorney for Plaintiff* |